GEORGE C. LAZAR, ESQ. (Bar No. 061847)
FOX JOHNS LAZAR PEKIN & WEXLER, APC
7676 Hazard Center Dr., Suite 500
San Diego, CA  92108

Telephone:   619.595.7187
Facsimile:   619.237.9717
Email:       glazar@foxjohns.com

Attorneys for Plaintiff Sharp Health Plan

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
05/17/2019 at 11:39:25 AM
Clerk of the Superior Court
By Melinda McClure, Deputy Clerk

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN DIEGO

### CENTRAL DIVISION

| | |
|---|---|
| SHARP HEALTH PLAN, a California nonprofit public benefit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTHEDGE SOFTWARE, INC., a Delaware corporation; DOES 1 through 10 inclusive,<br><br>Defendants. | CASE NO.: 37-2019-00025535-CU-FR-CTL<br>(Unlimited Civil Action)<br><br>COMPLAINT FOR:<br><br>(1)   FRAUD - CALIFORNIA CIVIL CODE SECTION 1710(1) AND (2)<br><br>(2)   FRAUD - CALIFORNIA CIVIL CODE SECTION 1710(3)<br><br>(3)   FRAUD - CALIFORNIA CIVIL CODE SECTION 1710(4)<br><br>(4)   BREACH OF CONTRACT - SPECIFIC PERFORMANCE<br><br>(5)   BREACH OF CONTRACT<br><br>(6)   VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 ET SEQ.<br><br>[Public - Redacts materials from conditionally sealed record - See Rule 2.551(b)(5), California Rules of Court] |

COMES NOW Plaintiff Sharp Health Plan ("Sharp) and for its causes of action against defendants alleges as follows:

[COMPLAINT]   - 1 -

## PARTIES

1. Plaintiff Sharp Health Plan is a California nonprofit public benefit corporation doing business in the County of San Diego, State of California. Sharp provides health care service plans and related administrative services for its members. Sharp offers individual and family plans, Medicare plans, and group plans, and it has been the highest member-rated health plan in California for four straight years. Sharp prides itself on customer service and accountability, for which Sharp has sought to harness technological solutions to improve its quality and efficiency with the goal of providing a high-quality member experience.

2. Defendant HealthEdge Software, Inc., a Delaware corporation ("HealthEdge"), develops, markets and licenses computer software applications to health plans such as Sharp. In addition, HealthEdge sells professional services to be provided in conjunction with its software. HealthEdge qualified to transact intrastate business in the State of California by filing its Statement and Designation by Foreign Corporation with the Secretary of State on May 6, 2014.

3. The identity, type, whether individual, corporate or otherwise, and capacity of those defendants named herein as Does are presently unknown to plaintiff. When the same have been ascertained, plaintiff will amend this complaint to add their names and capacities. Plaintiff is informed and believes, and on that basis alleges, that Does 1 through 10 are responsible for the damages alleged by plaintiff in this action.

## JURISDICTION AND VENUE

4. The contracts alleged in this Complaint were negotiated in the State of California in the County of San Diego. The contracts additionally were to be performed in the County of San Diego, State of California. All of the face-to-face interactions of HealthEdge and Sharp took place in the State of California.

5. The contracts were performed in the County of San Diego, State of California. The Software, as defined below, was installed to be used in operations of Sharp in the County of San Diego. The training and implementation work also took place in the County of San Diego, State of California. The principal office of Sharp Health Plan is located in the City of San Diego, State of

California and within the Central Division of this Court.

6. The affirmative misrepresentations described below took place by means of documents or statements made to plaintiff in the County of San Diego, State of California.

## BACKGROUND FACTS

7. In or around 2014, Sharp recognized that, because of the changing health plan environment, including, among other things, the implementation of the Affordable Care Act, its existing software systems supporting its core business operations were becoming inadequate. As a result, Sharp issued a request for proposal (the "RFP") to a number of vendors of software supporting health plan administration. Among other things, the RFP required a vendor to clearly describe the functionality of its then-implemented software.

8. In order that it could assess the functionality of the software solution being proposed by a vendor, the RFP required the vendor to provide a numeric score for various functionalities that Sharp defined as important for the software that would be responsible for all the functions of its administrative software; among other things, the software would have to enroll members, issue id cards, enroll health care providers, process and pay claims, and communicate with members. The numeric scoring system specified in the RFP set forth six different response codes a vendor could use:

> Vendors are requested to respond to the functional requirements beginning on page 14 [of the RFP]. Vendors are asked to place "0,1,2,3,4 or 5" (refer to Response Code Definition) in the response code column based on the capabilities of the proposed solution for each item.
>
> * * * * *
>
> 5   Specification is currently completely functional as part of the system capability, and is in use in a production environment in multiple Health Plan client solutions
>
> 4   Specification is currently completely functional as part of the system capability, and is in use in a production environment in multiple clients but not as part of a Health Plan solution

3   Specification is not currently available, but will be made generally available during the next year. Vendor is willing to contractually commit to functionality being available in the next year

2   Specification is not currently available, but will be made generally available during the next year. Vendor is not willing to contractually commit to functionality being available in the next year

1   The required specification is not currently available but could be developed for a charge

0   Specification is not available and is not planned for future availability

If additional information or alternative approaches exist, please augment your responses with narrative discussion in the comment section.

9. HealthEdge responded to the RFP (the "HealthEdge RFP Response") and stated that a "5" response ███████████████████████████████████████████████[1].

10. In addition, with regard to ███████████ functionality, HealthEdge augmented its "5" rating of many of the functionality requirements by providing a narrative description of the HealthEdge software's ████████████████████████████████████████████████████████. This narrative description is referred to as the "Functionality Narrative".

11. In addition to providing the HealthEdge RFP Response, HealthEdge provided Sharp, prior to the execution of the agreements described below, with an implementation estimate (the "Initial Implementation Services Estimate"). This document identified what Sharp could anticipate in terms of professional services implementation costs in the event a contract was signed. With regard to the core functionality referenced in Paragraph 10 (hereinafter the "████████ Functionality"), the estimated implementation cost ███████████████████████████.

---

[1] Certain portions of this initially-filed complaint have been redacted because of pervious statements by HealthEdge indicating that it claims that disclosure of certain materials would violate provisions of the parties' agreements. Sharp disputes this claim, but does not want to risk a violation. Promptly after the filing of this redacted complaint, Sharp will move to file the unredacted complaint under seal. See Rule 2.551, California Rules of Court.

12. The HealthEdge RFP Response, the Functionality Narrative and the Initial Implementation Services Estimate were material factors in inducing Sharp to enter into a software as a service agreement (the "SAAS") whereby Sharp would utilize the HealthEdge software (sometimes, the "Software") for the essential administrative functions of the health plan including, but not limited to, enrolling members, processing claims, paying healthcare providers, and communicating with the members of the health plan.

13. At the same time as the SAAS was executed, HealthEdge and Sharp entered into a professional services agreement (the "PSA") as a separate and distinct agreement which provided for the terms and conditions upon which HealthEdge and Sharp would enter into one or more Statements of Work ("SOW") for the provision of professional services with regard to the HealthEdge software.

14. As part of the SAAS, HealthEdge warranted (sometimes the "Warranty") that ██████████████████████████████████████████████████████████████████████████████ ██████████.

15. During the course of its pre-contract investigation of the HealthEdge software, Sharp determined that certain functionality necessary to the proper functioning of the Software to allow Sharp to perform necessary functions was not then available in the HealthEdge software. As part of the SAAS, HealthEdge agreed to deliver certain improvements to the Software by dates certain (the "Deliverables").

16. After the SAAS was signed, HealthEdge and Sharp entered into a SOW for the purpose of determining what would be necessary for the implementation of certain aspects of the Software, including aspects of the software ████████████████████ Functionality. Following the work done pursuant to this first SOW under the PSA, Sharp and HealthEdge entered into a second SOW to provide for professional services related to the actual implementation of portions of the Software, including the ████████████████ Functionality. This second SOW estimated the professional time needed ████████████████████████████████████ ████████████████████████.

1  17. Implementation then proceeded. Among other things, the implementation time ▮

2  ▮

3  ▮.

# I.

# FIRST CAUSE OF ACTION

(Fraud - California Civil Code §1710(1) and (2) - against HealthEdge and Does 1 - 10)

18. Plaintiff refers to and incorporates herein by this reference Paragraphs 1 through 17 of the Complaint as though fully set forth.

19. HealthEdge represented to Sharp that its "5" rating related to the ▮ ▮ Functionality was true. HealthEdge further represented to Sharp that the Functionality Narrative was true.

20. The representations set forth in the preceding paragraph were false in that: The ▮ ▮ Functionality was not ▮ ▮ Further the Functional Narrative was false, as was, among other things, ▮ ▮.

21. HealthEdge knew the representations set forth in Paragraph 19 were false or they were made recklessly and without regard for the truth of the matters stated.

22. HealthEdge intended that Sharp would rely on the representations set forth in Paragraph 19. Sharp reasonably relied upon the representations made by HealthEdge in the HealthEdge RFP Response.

23. Sharp was harmed by the representations set forth in Paragraph 19 in that it would not have entered into the SAAS had it known the true facts. Among other things, because the ▮ ▮ Functionality was not ▮ ▮ cost in excess of $2,200,000 as of August 31, 2018 over the estimated cost to implement the ▮ Functionality. This included, among other things, Sharp ▮. Sharp has therefore been damaged in an amount in excess of $2,200,000 and the damages continue to accrue.

1  24. In addition, the SAAS provides that in the event of any dispute arising out of the
2  agreement, the prevailing party shall be entitled, in addition to any other rights and remedies it may
3  have, to seek to recover reasonable attorney fees and costs. As a result, Sharp is entitled to recover
4  the attorney fees and costs incurred by it in this litigation.

5

6  II.

7  SECOND CAUSE OF ACTION

8  (Fraud - California Civil Code §1710(3) - Against HealthEdge and Does 1 through 10)

9  25. Plaintiff refers to and incorporates herein by this reference Paragraphs 1 through 17
10  and 23 of the Complaint as though fully set forth.

11  26. HealthEdge represented to Sharp that its "5" ratings related to the ▉
12  ▉ Functionality were true. HealthEdge further represented to Sharp that the
13  Functionality Narrative was true.

14  27. At the time the representations set forth in Paragraph 26 were made, HealthEdge
15  also provided the Initial Implementation Services Estimate with a statement of the time to
16  implement the ▉ Functionality. The Initial Implementation Services Estimate
17  failed to advise Sharp that implementation of the ▉ Functionality, ▉
18  ▉, would require Sharp to ▉
19  ▉. The second SOW also failed to advise Sharp
20  that implementation of the ▉ Functionality would require Sharp to ▉
21  ▉, an amount included
22  in the damages specified in Paragraph 23.

23  28. In failing to advise Sharp of ▉, Sharp is informed and
24  believes and on that basis alleges that HealthEdge intentionally failed to disclose ▉
25  ▉. Alternatively, the failure to disclose ▉
26  ▉ in the context of the HealthEdge RFP Response, the Initial Implementation Estimate
27  or the second SOW made the related representations to Sharp contained therein deceptive.

28  29. Sharp did not know at the time of the signing of the SAAS or the signing of the

[COMPLAINT]                                                                                  - 7 -

1  second SOW that implementation of the ▮▮▮▮▮ Functionality would require ▮

2  ▮▮▮. Had this omitted information been disclosed, Sharp would not have executed the

3  SAAS and the second SOW in the form that they were executed, if at all.

4      30.    Sharp was harmed by the failures to disclose set forth in this Second Cause of Action

5  in that it would not have entered into the SAAS or approved the second SOW had it known the true

6  facts.

7      31.    Sharp has been damaged in an amount in excess of $2,200,000, as described in

8  Paragraph 23 above.

9      32.    In addition, the SAAS provides that in the event of any dispute arising out of the

10  agreement, the prevailing party shall be entitled, in addition to any other rights and remedies it may

11  have, to seek to recover reasonable attorney fees and costs. As a result, Sharp is entitled to recover

12  the attorney fees and costs incurred by it in this litigation.

### III.

### THIRD CAUSE OF ACTION

(Fraud - California Civil Code §1710(4) - against HealthEdge and Does 1 through 10.)

17      33.    Plaintiff refers to and incorporates herein by this reference Paragraphs 1 through 17

18  and Paragraph 23 of the Complaint as though fully set forth.

19      34.    As part of the SAAS, HealthEdge warranted as noted above that ▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮. HealthEdge further promised that if the Warranty was not satisfied it would repair or

23  replace the Software so as to satisfy the warranty.

24      35.    HealthEdge intended that Sharp rely upon the foregoing promise and Sharp

25  reasonably relied upon the promise in entering into the SAAS. Sharp relied upon the promise

26  contained in the SAAS in entering into the agreement.

27      36.    Sharp is informed and believes and on that basis alleges that HealthEdge did not

28  intend to perform its promise made with regard to the Warranty. Alternatively, HealthEdge failed

1 | to disclose that it was ███████████████████████████████████.

2 |   37. HealthEdge did not repair or replace portions of the Software so that ████

3 | ███████████████████████████████████████. HealthEdge acknowledged after the

4 | contract date ██████████████████████████████████████.

5 |   38. As a result of the foregoing, Sharp has suffered damage in an amount in excess of

6 | $2,200,000 as described in Paragraph 23 above with regard to the ████████████

7 | Functionality.

8 |   39. In addition, the SAAS provides that in the event of any dispute arising out of the

9 | agreement, the prevailing party shall be entitled, in addition to any other rights and remedies it may

10 | have, to seek to recover reasonable attorney fees and costs. As a result, Sharp is entitled to recover

11 | the attorney fees and costs incurred by it in this litigation.

12 |

13 |             IV.

14 |        FOURTH CAUSE OF ACTION

15 |      (Specific Performance - Against HealthEdge)

16 |   40. Plaintiff refers to and incorporates herein by this reference Paragraphs 1 through 40

17 | of the Complaint as though fully set forth.

18 |   41. HealthEdge breached the warranty described in Paragraph 34 in that the Software

19 | was not ████████████████████████████████████████████████████ In

20 | particular, the ██████████ Functionality ████████████████████████████

21 | ██████████████████████.

22 |   42. In addition, HealthEdge failed to implement all the Deliverables by the dates

23 | promised and certain of the Deliverables have not even now been implemented as required in the

24 | Schedule A-2 of the SAAS. In addition, certain functionality, ████████████████, has not

25 | been implemented as promised.

26 |   43. The foregoing constitute breaches of the parties' contract.

27 |   44. Because HealthEdge controls the Software and Sharp has no access to the source

28 | code (except in certain very limited circumstances), the remedy of damages will not adequately

compensate Sharp for HealthEdge's breach of the SAAS and failure to implement required functionality.

45. The SAAS is just and reasonable as to HealthEdge and specific performance will not subject HealthEdge to undue hardship.

46. The requirements of the SAAS, particularly as they relate to the Deliverables that still have not been incorporated into the Software, the improperly implemented functionality, and the ▮▮▮▮▮▮▮▮▮▮ that were not incorporated into the Software as of the date of execution of the SAAS and not provided thereafter are sufficiently certain and enforceable that a court can determine with reasonable precision what is required of HealthEdge and the court can order the performance required under the contract.

47. Sharp has performed as required under the SAAS.

48. In addition to specific performance, Sharp is entitled to the ancillary costs incurred with regard to the implementation of the functionality not delivered or available as required by the SAAS, including but not limited to: costs incurred to produce "work arounds" to meet the ongoing business requirements of the health plan; additional in house costs related to delayed implementation of the functionality; and additional in house costs related to implementation of the functionality required by the judgment for specific performance required by this cause of action.

49. The SAAS provides that in the event of any dispute arising out of the agreement, the prevailing party shall be entitled, in addition to any other rights and remedies it may have, to seek to recover reasonable attorney fees and costs. As a result, Sharp is entitled to recover the attorney fees and costs incurred by it in this litigation.

V.

FIFTH CAUSE OF ACTION

(Breach of Contract - Against HealthEdge)

50. Plaintiff refers to and incorporates herein by this reference Paragraphs 1 through 49 of the Complaint as though fully set forth.

51. HealthEdge breached the warranty described in Paragraph 34 in that ▮▮▮▮

1 ██████████████████████████████████████████████████████████████████████ In
2 particular, the ████████████ Functionality did not ████████████
3 ████████████████. In addition, Sharp was required to expend in excess of $2,300,000
4 for custom programming and other work to plug the functionality gaps in the Software (other than
5 those in the ████████████ Functionality), which functionality had been ████████
6 ████████████████ (the "Custom Functionality").

7   52.   In addition, HealthEdge failed to implement all the Deliverables by the dates
8 promised and certain of the Deliverables have not been implemented as required in the SAAS.   In
9 addition, certain functionality, ████████████████, has not been completely implemented
10 and contains defects.

11   53.   Sharp performed as required under the SAAS. Further, in order to meet the
12 requirements of its business, Sharp was required to pay for the Custom Functionality.

13   54.   HealthEdge's failure to perform as required under the SAAS was unjustified.

14   55.   As a result of HealthEdge's failure to perform, Sharp incurred damages in excess
15 of $4,500,000 through August 31, 2018 (less any recovery under other causes of action) as follows:

16   A.   Excess "per member per month" costs because of failure to delivery
17       functionality required by one of the Deliverables in an amount in excess of
18       $800,000.
19   B.   The cost of the Custom Functionality in an amount in excess of $2,300,000
20       as of August 31, 2018 together which such amounts as have thereafter
21       accrued.
22   C.   To the extent not remedied by damage claims in other causes of action, costs
23       associated with implementing the ████████████ Functionality in an
24       amount to be determined; see Paragraph 23.
25   D.   Costs incurred because of HealthEdge's failure to deliver ████████
26       ████████████████ in an amount in excess of $500,000.

27   56.   Costs continue to accrue after August 31, 2018 in an amount to be determined. Sharp
28 will seek leave to amend this complaint to add such additional costs when they have been

ascertained.

57. In addition, the SAAS provides that in the event of any dispute arising out of the agreement, the prevailing party shall be entitled, in addition to any other rights and remedies it may have, to seek to recover reasonable attorney fees and costs. As a result, Sharp is entitled to recover the attorney fees and costs incurred by it in this litigation.

## VI.

## SIXTH CAUSE OF ACTION

(Violation of B&P Code §17200 - against HealthEdge)

58. Plaintiff refers to and incorporates herein by this reference the foregoing allegations of this Complaint.

59. The wrongful HealthEdge conduct described in the First, Second and Third Causes of Action constitutes an unfair and unlawful business practice in violation of, among other things, California Business and Professions Code §§17200 through 17203.

60. Sharp is entitled to the equitable remedies available under Sections 17200 through 17203, including but not limited to restitution of amounts paid to HealthEdge that would have not been incurred but for its unfair and unlawful business practices, including the payments for the Custom Functionality.

## PRAYER

WHEREFORE, Plaintiff prays for judgment as follows:

I. On the First Cause of Action:
    A. For Damages of $2,200,000 as of August 31, 2018, together with additional amounts that have accrued, but not in excess of the damages related to the ▮▮▮▮▮▮ Functionality.
    B. For Attorney's Fees and Costs.

II. On the Second Cause of Action:
    A. For Damages of $2,200,000 as of August 31, 2018, together with additional

1   amounts that have accrued, but not in excess of the damages related to the
2   ▉▉▉▉▉▉▉▉▉▉ Functionality.
3   B.   For Attorney's Fees and Costs.
4   III.  On the Third Cause of Action:
5   A.   For Damages of $2,200,000 as of August 31, 2018, together with additional
6   amounts that have accrued, but not in excess of the damages related to the
7   ▉▉▉▉▉▉▉▉▉▉ Functionality.
8   B.   For Attorney's Fees and Costs.
9   IV.  On the Fourth Cause of Action:
10  A.   For a judgment of specific performance with regard all of the functions
11  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
12  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
13  ▉▉▉▉▉▉▉▉ which are still not materially performing in the Software
14  installed at Sharp, including all of the ▉▉▉▉▉▉▉▉▉▉ Functionality
15  that should have been implemented, requiring HealthEdge to implement in
16  the Software all such functionality; and
17  B.   For a judgment of specific performance requiring HealthEdge to implement
18  all of the Deliverables in the Software;
19  C.   For a judgment of specific performance requiring HealthEdge to repair all
20  defective implementations of functionality in the Software, including the
21  ▉▉▉▉▉▉▉▉ function.
22  D.   For incidental damages according to proof.
23  E.   For Attorney's Fees and Costs.
24  V.   On the Fifth Cause of Action:
25  A.   For damages in excess of $4,500,000 as of August 31, 2018, including those
26  specific damages described in paragraph 45 of this complaint, together with
27  such additional damages that have accrued thereafter, but not duplicative of
28  amounts awarded in the first through third causes of action.

1         B.     For Attorney's Fees and Costs.

2   VI.    On the Sixth Cause of Action:

3         A.     For restitution to Sharp of all funds paid to HealthEdge as a result of the unfair business practices, including the costs to implement the ▓ Functionality.

6         B.     For such other relief as provided by statute.

7   VII.   On all causes of action:

8         A.     For costs.

9         B.     For such further and other relief as the Court deems just and proper.

DATED: May 17, 2019

FOX JOHN█████████ WEXLER
A Professio█████████

By: _____
George █████████
Attorn█████████ Plan

X:\00_2019_Current\SharpHealthPlan\SharpLit\zz190517_Complaint RedactionVersion.wpd

GEORGE C. LAZAR, ESQ. (Bar No. 061847)
FOX JOHNS LAZAR PEKIN & WEXLER, APC
7676 Hazard Center Dr., Suite 500
San Diego, CA  92108

Telephone:   619.595.7187
Facsimile:    619.237.9717
Email:          glazar@foxjohns.com

Attorneys for Plaintiff Sharp Health Plan

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**05/23/2019** at 09:43:00 AM

Clerk of the Superior Court
By Vanessa Bahena, Deputy Clerk

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SAN DIEGO**

**CENTRAL DIVISION**

| | |
|---|---|
| SHARP HEALTH PLAN, a California nonprofit public benefit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTHEDGE SOFTWARE, INC., a Delaware corporation; DOES 1 through 10 inclusive,<br><br>Defendants. | CASE NO.: 37-2019-00025535-CU-FR-CTL<br>(Unlimited Civil Action)<br><br>Assigned to:   Hon. Ronald Styn<br>                       Dept. C-74<br><br>Date Filed:    May 17, 2019<br>Trial Date:    [Not Assigned]<br><br>DECLARATION RE NOTICE<br><br>IMAGED FILE<br><br>Date:    May 28, 2019<br>Time:   8:30 a.m.<br>Dept.:   C-74 |

I, George C. Lazar, declare as follows:

1. I am an attorney at law licensed to practice law before the courts of the State of California. I am attorney for plaintiff in this matter and have filed the ex parte application set for hearing as noted above.

2. Notice of the ex parte hearing was given on May 21, 2019. A copy of the email sent to the attorney for HealthEdge involved in pre-filing matters is attached to this declaration.

[EX PARTE APPLICATION]                                                                                        - 1 -

3. HealthEdge has not stated a position on the subject matter of the ex parte application. However, HealthEdge has indicated it will be seeking to remove this matter.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Diego, California on May 23, 2019.

*/s/ George C. Lazar*

_____

George C. Lazar